UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL L. ANTONSON,<br><br>                    Plaintiff,<br><br>      V.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>                    Defendant. | **REPORT AND<br>RECOMMENDATION**<br><br>08-CV-581<br>(TJM/VEB) |

## I. INTRODUCTION

In June of 2003, Plaintiff Michael Antonson filed applications for disability, disability insurance, and Supplemental Security Income ("SSI") benefits under the Social Security Act. Plaintiff alleges that he was disabled and unable to work during the period between November 13, 2002 and March 1, 2004, primarily due to pain and depressive disorder. Plaintiff's applications were denied by the Commissioner of Social Security.

Plaintiff, through his attorney, Peter W. Antonowicz, Jr., Esq., commenced this action on June 3, 2008, by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1). Plaintiff seeks judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On August 24, 2009, the Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 26).

For the reasons set forth more fully below, because of deficiencies in the record, the

Court recommends that this case be remanded for further consideration and development of the record.

## II. BACKGROUND

The relevant procedural history may be summarized as follows.  In June of 2003, Plaintiff applied for disability, disability insurance, and SSI benefits, alleging that he had been unable to work since February 26, 1999. ($T^1$ at 47-49, 306-308).  The Commissioner initially denied the applications on February 10, 2004. (T at 20).  Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). (T at 24-25).  On July 27, 2006, Plaintiff appeared with a paralegal from his attorney's office at a hearing before ALJ Alfred R. Tyminski in Utica, New York.  (T at 336).   At the hearing, Plaintiff amended his alleged disability period, claiming disability only during a closed period between November 13, 2002, and March 1, 2004. (T at 339-40).

On September 5, 2006, the ALJ issued a written decision denying Plaintiff's applications for benefits.  (T at 12-18).  The ALJ's decision became the Commissioner's final decision on April 24, 2008, when the Social Security Administration's Appeals Council denied Plaintiff's request for review.  (T at 6-9).

Plaintiff commenced this action by filing a Complaint on June 3, 2008. (Docket No. 1).  Plaintiff, through counsel, filed a supporting Brief on November 25, 2008. (Docket No. 12).  The Commissioner filed a Brief in opposition on January 8, 2009. (Docket No. 25).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern

---

[1]Citations to "T" refer to the Administrative Transcript.  (Docket No.8).

District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[2]

## III. DISCUSSION

**A.     Legal Standard**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

---

[2]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." <u>Rosado v. Sullivan</u>, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." <u>Valente v. Sec'y of Health & Human Servs.</u>, 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. <u>See</u> 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[3]

---

[3]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.   Analysis**

    **1.   Commissioner's Decision**

The ALJ concluded that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2010. (T at 16).  The ALJ determined that Plaintiff had not engaged in substantial gainful activity between November 13, 2002, and March 1, 2004. (T at 16).  The ALJ found that Plaintiff had not established any medically determinable severe impairments that would prevent substantial gainful activity for a continuous twelve months.  (T at 16).

After reviewing the medical evidence, the ALJ concluded that there was "no competent and acceptable clinical evidence of record evincing the existence of any

---

    Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

impairment or combination of impairments, mental and/or physical, that has precluded [Plaintiff] from engaging in past relevant work for not less than 12 continuous months, let alone the alleged closed period of disability." (T at 18). Therefore, the ALJ determined that Plaintiff was not under a "disability," as defined under the Act. (T at 18).

As noted above, the ALJ's decision became the Commissioner's final decision on October 26, 2007, when the Appeals Council denied Plaintiff's request for review. (T at 6-9).

### 2. Plaintiff's Claims

Plaintiff contends that the Commissioner's decision should be reversed. He offers three (3) principal arguments in support of that position. First, Plaintiff asserts that the ALJ's decision was not supported by substantial evidence and was contrary to the opinions of Plaintiff's treating medical providers. Second, Plaintiff argues that the ALJ did not properly credit his allegations of disabling pain. Third, Plaintiff contends that the ALJ did not give sufficient consideration to the effect of Plaintiff's mental impairments.

#### a. Substantial Evidence/Treating Providers

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams v. Bowen, 859 F.2d 255, 258 (2d Cir.1988).

Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other

substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).[4]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances. In this regard, the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R. § 404.1527(d)(1)-(6); see also de Roman, 2003 WL 21511160, at *9; Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998); Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998) .

In this case, Plaintiff argues that the ALJ's conclusion is not supported by substantial evidence. Specifically, Plaintiff points to the following statement by Dr. Thomas Masten, an orthopedic and pain management doctor: "I have stated that he can do his activities of daily living. By that I mean brushing his teeth, combing his hair so he is not totally disabled. But he is severely disabled. He cannot lift more than five pounds at a time if he goes grocery shopping. He is very limited in what he can do. He cannot bend well, he cannot lift, he cannot lift a basket of laundry." (T at 184).

Dr. Masten diagnosed Plaintiff as suffering from "ongoing thoracic and cervical

---

[4]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

7

referred pain" and opined that his prognosis was "guarded for full recovery" and "good for partial recovery." (T at 302). Plaintiff's physical therapist, Thomas K. Wick, noted that he complained "of being constantly fatigued and when he does any activity after a couple of days he fatigues to the point where he needs five days to rest to recover." (T at 192). Plaintiff also points to records from a visit to Rome Memorial Hospital's Urgent Care Center, including a visit wherein Plaintiff complained of "chronic chest pain" caused by an injury to his chest. (T at 243).

Plaintiff received physical therapy for his pain and was examined by Robert Bryla, a chiropractor. Bryla diagnosed Plaintiff as suffering from a "mild-thoracic strain/sprain," which he indicated was caused by a February 1999 work injury. (T at 167).

As noted above, the ALJ concluded that Plaintiff had not established any medically determinable severe impairments that would prevent substantial gainful activity for a continuous 12 months. (T at 16). With regard to Dr. Masten's assessment that Plaintiff was "severely disabled," the ALJ noted that Dr. Masten "refused" to complete a residual functional capacity assessment. (T at 17). The ALJ also referenced Dr. Masten's statement that Plaintiff could perform his activities of daily living. (T at 17).

This Court finds that the ALJ failed to adequately develop the record in this regard. The ALJ concluded that Plaintiff had not established any medically determinable "severe" impairments." Thus, the ALJ stopped his analysis at Step Two of the sequential process.

"An impairment or combination of impairments is found 'not severe' and a finding of 'not disabled' is made at this step when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or

work experience were specifically considered (*i.e.*, the person's impairment(s) has no more than a minimal effect on his or her physical or mental ability(ies) to perform basic work activities)." SSR 85-28; see also Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir.1995) (noting that Step Two analysis "may do no more than screen out *de minimis* claims"). The remaining analysis set forth in Steps Three through Five must be undertaken where the claim is more than *de minimis*. Id.

In July 2003, which was well within the period of alleged disability, Dr. Masten, Plaintiff's treating physician, opined that Plaintiff was "severely disabled," "very limited" in what he could do, and unable to lift five pounds. (T at 184). Contrary to the ALJ's indication, it is not clear that Dr. Masten "refused" to perform a residual functional capacity assessment. Rather, the doctor simply noted that a functional capacity evaluation was "not done." (T at 303-304). This does not permit a conclusion that the doctor "refused" to complete a RFC. Moreover, these assessments from Plaintiff's treating physician certainly indicated that his condition was more than *de minimis*.

Further, although Dr. Masten stated that Plaintiff was able to perform his activities of daily living, he qualified this statement by explaining that he meant that Plaintiff could brush his teeth and comb his hair, making it clear that he nevertheless considered Plaintiff "severely disabled." (T at 184). It is well-settled that "[s]uch activities do not by themselves contradict allegations of disability," as people should not be penalized for enduring the pain of their disability in order to care for themselves." Woodford v. Apfel, 93 F. Supp.2d 521, 529 (S.D.N.Y. 2000); see also Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) ("We have stated on numerous occasions that 'a claimant need not be an invalid to be found disabled' under the Social Security Act.").

9

The ALJ indicated that "[p]ain is a symptom, not a medical diagnosis," apparently suggesting that Dr. Masten had not provided a sufficient medical diagnosis regarding Plaintiff's medical condition. (T at 17). However, there is no indication that the ALJ re-contacted Dr. Masten to request clarification or additional information regarding the diagnosis.

The ALJ has an "affirmative duty to develop the record and seek additional information from the treating physician, *sua sponte*, even if plaintiff is represented by counsel" to determine upon what information the treating source was basing his opinions. Colegrove v. Comm'r of Soc. Sec., 399 F.Supp.2d 185, 196 (W.D.N.Y.2005); see also 20 C.F.R. §§ 404.1212(e)(1), 416.912(e) (1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source ... does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."). Failure to re-contact is error. See Taylor v. Astrue, No. CV-07-3469, 2008 WL 2437770, at *3 (E.D.N.Y. June 17, 2008) (finding it error for the ALJ to not re-contact Plaintiff's treating physician when he determined that the physician's opinion was "not well-supported by objective medical evidence").

Here, the ALJ screened out Plaintiff's claim at Step Two in the face of an opinion from his treating physician that he was "severally disabled" and "very limited." At a minimum, to the extent that the ALJ determined that Dr. Masten's assessment was insufficiently supported by clinical findings or undermined by other evidence of record, the ALJ was obligated to re-contact Dr. Masten to request further information and clarification.

This Court finds that a remand is warranted and that, on remand, the ALJ should re-contact Dr. Masten and request that he (1) provide further clarification regarding his

diagnosis during the relevant period, and (2) either provide a residual functional capacity assessment with respect to the relevant period or explain why he chose not to perform such an assessment in the first instance. The ALJ should then re-evaluate whether Plaintiff satisfied the Step Two analysis in light of any additional information provided by Dr. Masten.

### b.     Credibility Determination

"It is well settled that 'a claimant's subjective evidence of pain is entitled to great weight' where ... it is supported by objective medical evidence." Simmons v. United States R.R. Retirement Bd., 982 F.2d 49, 56 (2d Cir.1992) (quoting Rivera v. Schweiker, 717 F.2d 719, 725 (2d Cir.1983) (citations omitted)). Where, as here, an ALJ rejects subjective testimony concerning pain and other symptoms, the ALJ "must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his determination is supported by substantial evidence." Brandon v. Bowen, 666 F.Supp. 604, 608 (S.D.N.Y.1987); see Valente v. Secretary of HHS, 733 F.2d 1037 (2d Cir.1984).

In this case, Plaintiff testified that, during the period of alleged disability, he spent most of his time "laying down" because it would become difficult and painful to hold his head up after a small amount of exertion. (T at 348). He was able to perform very basic activities of daily living, but did not perform any household chores. (T at 349). Plaintiff testified that he was only able to lift light objects and needed help grocery shopping. (T at 350). He indicated that he was able to sit or stand for an hour and that any physical exertion increased his pain. (T at 352).

The ALJ discounted Plaintiff's testimony, noting that one of his previous treating

physician's indicated the possibility that Plaintiff was "doctor shopping" and that his complaints might contain "an element of malingering." (T at 136-37). However, Plaintiff's testimony is certainly consistent with Dr. Masten's assessment that he was "severally disabled." Further, the State Agency review doctor noted that Plaintiff had indicated an ability to walk only one mile before needing a rest and stated that he experienced pain upon lifting more than ten pounds or standing more than thirty minutes. (T at 217). The State Agency doctor opined that, based upon the totality of the evidence, "those statements are . . . credible." (T at 217).

On remand, the ALJ should revisit his credibility assessment in light of the information obtained upon re-contacting Plaintiff's treating medical providers.

### c.     Psychiatric Condition

Dr. Tabrizi, Plaintiff's treating psychiatrist, opined that Plaintiff had an "[e]xtended impairment in functioning due to mental illness" and diagnosed an Axis I 296.33 mental illness (Major Depressive Disorder, Recurrent) and generalized anxiety disorder. (T at 209, 299). The ALJ concluded that Plaintiff's mental impairment was not severe, noting that Dr. Tabrizi's assessment was (1) not supported by clinical notes or findings and (2) contradicted by the assessment of the consultative psychiatric examiner. (T at 17).

However, the "Second Circuit has made clear, . . . that an ALJ cannot simply discount a treating physician's opinion based on a lack of clinical findings that accompany that opinion." Colegrove, 399 F.Supp.2d at 196 (citing Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998)). "[A] treating physician's failure to include objective support for the findings in his report does not mean that such support does not exist; he might not have provided this information in the report because he did not know that the ALJ would consider it critical

to the disposition of the case." Fox v. Astrue, 05-CV-1599, 2008 WL 828078, at *8 (N.D.N.Y. Mar. 26, 2008) (citing Rosa v. Callahan, 168 F.3d 72, 80 (2d Cir. 1999)). Under the circumstances, the ALJ had an obligation to re-contact Dr. Tabrizi to request further information regarding the clinical basis for his diagnosis.

Second, although Dr. Jeanne A. Shapiro opined that the results of her consultative examination "do not appear to be consistent with any psychiatric problems that would significantly interfere with [Plaintiff's] ability to function on a daily basis," (T at 213), she was not a treating source. Before accepting the assessment of a consultative examiner over that of Plaintiff's treating provider, the ALJ had an affirmative obligation to more fully develop the record in this regard.

On remand, the ALJ should re-contact Dr. Tabrizi and request any clinical notes or findings related to the period of alleged disability and/or a further explanation from Dr. Tabrisi regarding his diagnosis.

**3.   Remand**

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)). Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." Kirkland v. Astrue, No. 06 CV 4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008). Given the deficiencies in the record as outlined above, it is recommended that the case be remanded for further proceedings consistent with this Report and Recommendation.

13

## IV. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendant's Motion for Judgment on the Pleadings be DENIED, that the decision of the Commissioner be reversed, and that the case be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405 (g) for further administrative proceedings consistent with this Report and Recommendation.

Respectfully Submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated: October 1, 2009

Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

October 1, 2009

/s/ Victor E. Bianchini

Victor E. Bianchini
United States Magistrate Judge